Case No. 14-5325 Robert Bradford v. LVNV Funding, LLC, et al. Case No. 14-5519 Carl Sells v. Steve Hawkins Case No. 14-5674 William Melvin v. PYOD, LLC Case No. 14-5674 William Melvin v. PYOD, LLC In a lot of ways, relatively straightforward. It involves a collection agency that we allege in our complaint and in the summary judgment motions, or the multiple motions that went through the district court, that they engaged in collection activity. It's LVNV. The statute that controls this case is 6221-101 at SEC. That statute says if you are collecting on delinquent accounts in the state of Tennessee, and you engage in collection activity, you may not engage in that type of behavior absent a license. It's undisputed. LVNV did not have a license. Our argument, and we think this is why the district court's decision below should be reversed, is that LVNV filed cases against the appellants in the appropriate small claims court in Tennessee, in its own name, as the principal and owner of the accounts, using three different law firms with regard to Mr. Bradford, who I'll focus on just for simplicity. So the three cases are all pretty much the same, is that right? Yes. The only difference, and I don't think it's a difference, is LVNV has attorney agreements between itself and three different law firms, but they all behave in essentially the same manner, and the record reflects that. Okay. But let me ask you then about what it is that these folks, this LVNV, does that is any different from American Express or Joe's Hardware Store, in the sense that they don't go out and collect. They hire law firms or other collection agencies to do that, and we don't require American Express or Joe's Hardware to be licensed, correct? Correct, Your Honor, and in fact, there is no difference except one, and that is one of the key questions here. American Express collects its own accounts. It does not sell them to debt buyers such as LVNV, where they buy accounts in mass and then internally through the help of agents, borrowed servants, worker bees, if you will, from resurgent assister corporation, file lawsuits as the principal using the attorneys as agent. But what you've got, when you say there's no difference except, is that that has to do with how they got the debts, because they are debt holders now just the same as American Express. Yes, Your Honor, and the key difference, and hopefully that was what I was getting to, is the statute applies to entities that collect upon delinquent debt. American Express falls within an exemption. There are four exemptions under Section 103, and one of those is entities that collect their own debt are not required to have a license. On the other hand, entities that collect on delinquent debt, which they purchased, are required to have a license and without a license. Is that stated or are you taking that by extrapolation from the words? That's stated in plain, ambiguous language. Which one? In what section? 103, Your Honor. It says the purchaser of, and I'm paraphrasing slightly, but it says the purchaser of delinquent accounts who engages in collection activity is a collection service. Then Section 105 says if you're a collection service, you may not engage in collection activity without a license. Okay, but it goes back to whether what you're doing is, in fact, engaging in collection services. So to go back to American Express, if some competitor went broke and they bought some of their debts and did everything else the same, they'd be a collection agency on those debts and not on their own debts, even if it went to the same law firm, the same court, et cetera? I think that's possible, Your Honor, because that's not their business. But if they expanded their business to buy delinquent debts, now there's a distinction. If they took over a competitor and bought the assets, then the accounts as assets would become part of American Express's business. Therefore, they would not have purchased delinquent accounts. They would have purchased another business, and the assets would have been subsumed within the American Express entity. Therefore, they would not be a collection service. All this is purely a question of interpreting the state statute? Yes, Your Honor. Well, I take that back. It's interpreting the state statute first. Then it's applying the plain language of the statute, mainly the definition of who's a collection service, which is someone who engages in collection activity, applying that plain language to the facts of the case to see if there's a material issue of fact with regard to whether LVNV engaged in collection activity. Well, is there any federal question involved remaining in the case? The ones on appeal in this case, no, Your Honor. Well, there will be if I get what I ask for, which is a reversal and a remand. Because LVNV without a license is engaging or threatening to gauge in illegal or unlawful conduct under state law, that would be a violation of E-5 of the FDCPA, and following the LeBlanc decision in the 11th Circuit, that would be the actionable. And the provision you're saying then, that would be a violation of the provision of the Federal Debt Collection Act? Yes, that's the premise of the case. And that provision that you are referring to there says precisely what? It says that a debt collector may not engage or threaten to engage in unlawful conduct. The state statute says it is unlawful and it's a Class C misdemeanor to engage in collection activity, and we say the filing of a lawsuit is collection activity. It's unlawful activity to file that lawsuit without having a license. That lawsuit is over a delinquent account that LVNV purchased. LVNV used its agent, the law firm, to prosecute the lawsuit, but LVNV is the principal. In the record, there's an attorney fee contract that preserves specifically the attorney-client relationship. That's what it looks like on the state law question, at least on the service, that if someone trying to collect a debt hires a lawyer who's licensed to practice law, then they don't have to get a license under state law as a collection service. That's what it appears on the surface, and there's language that is used in the statute and so on. And, you know, it was subsequently apparently an effort was made to clarify it or something. I don't mean to cut you off, Your Honor. Yes. So what's your answer to that problem that you don't have to get a license under state law if you are acting through a lawyer? Your Honor, our position is that the Arkansas Supreme Court— Yeah, no, this is not Arkansas. I know, but the statute is 90% similar. The definition of collection agency is someone who engages in collection activity. With regard to your question about the attorney, the attorney ethically cannot run the case. The attorney-client relationship requires that the client, in this case LVNV, per its contract, which is in the record, is the captain of the ship. The attorney asks LVNV for permission to file the lawsuit. LVNV pays the fee to file and involve the Tennessee court system. It pays for a witness. It pays for documents. It receives payments from judgments. If it gets a judgment and no money, it instructs its attorneys to file liens, levies, and garnishments. The captain of the ship, the principal, is LVNV. The attorney is not acting on his own. The attorney is providing professional advice and acting in his role as an attorney at law. So that may be true, but the distinction appears to be in Tennessee that if that happens and the lawyer is bringing the case on behalf of a collection agency, that the collection agency doesn't have to have a license. Your Honor, again, the definition is a collection service is someone who engages. May I finish? My time's up. May I finish answering? The definition of engage in collection activity. The operative phrase is, because the Supreme Court has said collection activity in Jenkins v. Hines, filing a lawsuit constitutes collection activity. So in Tennessee, the courts in the Tennessee Supreme Court look to essentially dictionaries as a start. Black's Law Dictionary defines engage as being involved with, participating in, or having control in the activity. But then that would apply to every client of a regular collection service company, wouldn't it? By the same logic, they'd still be the captain of the ship.  LVNV, whether they file one lawsuit or 1,000, they are the captain of each lawsuit, just because it's a collection lawsuit. It's no different than a Beth to Farm lawsuit between Anheuser-Busch and a class action. Thank you, counsel. If you want to save your time for rebuttal, you'll need to stop. I do. Thank you. Good morning, Your Honors. My name is John Boyle, and I'm here representing the defendant appellees, LVNV Funding, LLC, and PYOD, LLC. I think for starters, we would all agree that various public policy goals are frequently accomplished through state regulation and licensing of certain professions and businesses. And Tennessee is among a number of states that licenses various professions and businesses, and in particular, collection services. Now, if you look around the country, there are collection service acts all throughout the country, but they lack uniformity. They vary from state to state. The language is different. The terms are different. The definitions are different. And they all try to achieve certain state policies that the state is trying to do. And in this case, I think one of those is to obviously provide for consumer protection and to make sure that there's adequate safeguards in this industry that the people who are actually doing the collecting are licensed and therefore accountable to the state. Now, this issue focuses, or this appeal, the issue in this appeal focuses exclusively on whether LVNV and PYOD were required to be licensed as collection services when the state collection lawsuits were brought in the three underlying cases. The trial court said no. My clients, LVNV and PYOD, and I want to be clear here, they have no employees. They have no interaction themselves with debtors. They are strictly a holding company. It's literally a metaphysical impossibility for them to actually direct anything. Instead, what they do is they use a servicing agent, resurgent, they're called, resurgent management. Resurgent takes these loans, and they're the ones that then prosecute the collection in the name of LVNV. Resurgent, the collection agency? Yes, and they're a licensed Tennessee collection service agency. So the entity that owns the debt gives it to, entrusts it to a licensed Tennessee collection service agency who makes the decisions about what to do, how to proceed, which law firms to hire. And they, in turn, hire licensed Tennessee attorneys who pursue all these collection actions. So is there any reason that they're suing? If it's, you know, the underlying idea here as I read it was that it's some type of a false practice to sue, and then if they fight to always dismiss it. Is there any reason they couldn't sue resurgent for doing that? Or why are they going further up the chain if the real consumer gravamen is this, in their view, shell game of only collecting from people who are too weak to fight back? I hadn't really thought of that question, but theoretically they probably could. They could sue resurgent and perhaps even the law firms that are hired. I would say in this case that particular issue was also raised and dismissed and is not on appeal. And what happens in Tennessee, each state has different means of doing collections, whether it's small claims court or whatever. But in Tennessee, the attorneys file a civil warrant. They have to have this affidavit of indebtedness attached to it as part of the statutory requirements. And it sets up a very simple court system. And so there will be occasions where they get to court or before court, the defendant makes a challenge to the legitimacy of the debt, and it's fairly common that they will dismiss those lawsuits or those civil warrants and instead choose some other option or procedure to take. Is there some case law, federal case law, that says that when a collection agency decides that it doesn't want to go forward with a case because there's not a default judgment in the case so that it will have to litigate the case, presumably, that that is a violation of the federal collection law? There is a case, and the name escapes me, that came out recently that took the position, the particular facts of that case were that the defendant had done nothing, nothing, to verify the debt, check the debt, make sure it was there, had gathered no documents, took it all the way to the day of court, and wanted to dismiss the case and voluntarily or get an agreement from the plaintiff or the defendant to do so. That was a case where you're saying there was evidence that the debt may have been just made up? Either made up or that there was, they never showed an intent at any time to ever be able to prove this debt. And what typically happens in our cases is... in that it has been purchased and there's no evidence that it's a fraudulent effort to make up a debt. If there's any case that says not pursuing that after it's going to be litigated and it's not defaulted, that that is a violation of federal law, the Federal Debt Collection Act. Do you follow me? I think I do. I think obviously if the debt is... I just, it seems perfectly reasonable on the surface of it that if a debt collector who's bought from debt doesn't want to go forward with litigation after there's no default judgment, is going to have to litigate the case, may cost maybe a small debt or whatever reason, going to have to pay a lawyer, court fees, whatever, that the debt collector may decide that it's not worth it. That's correct, Your Honor. Oftentimes... And I just wondered if there's some case law that says if that's the policy, deciding that in relatively most of these small debts, they're not going to go forward unless there's default judgment, that decides that that is a violation of the federal law. That's what I was asking. I can see that if a debt collector is making up the debt, that the debt doesn't exist, and you're just out suing people, that that would be a violation. But where the debt has no question that the debt doesn't at least nominally exist, I just don't quite see why that would be a violation of the act if the debt collector didn't want to go forward. It would not, Your Honor. Because this issue wasn't up on appeal, I can't call the cases off the top of my head. But the cases generally are that the plaintiff is free to make tactical decisions in litigation in terms of what they want to do. So, for instance, if the price is prohibitive given the size of the debt, et cetera, you're in a remote county in some state, et cetera, they may make the decision, we don't want to go forward. But I think that the few cases that find kind of a different view on that have to do with where either the debt was based on some kind of fraud or misrepresentation. In this case, we don't have that allegation. In the court below, when the district court got to the merits under the federal statute, it said there wasn't any evidence for a peppercorn or some such thing. Correct, Your Honor. What we did is we submitted the actual materials that support the debt. So we got them from the original lender who then assigned them to LVNV, provided those, and those would be the types of things we'd use if the actual case had gone to trial in the state court. As a result, the federal judge looking at that said, I don't see any evidence here that there was never an intent at any time to be able to pursue these debts or to back them up in any way. So then what we've got before us here, at least nominally, is just a state law question of what the licensing law means. Exactly, exactly. It only gets to us because of the hook through the FDCPA of things that could not legally be taken, which might be a whole separate issue as to whether you can legally sue even if you're subject to a fine or something, but that's a separate issue. I'll be frank. There's no question this is based on allegation of a technical violation which requires an interpretation of the statute. As I read 105, it seems like there's a whole bunch of things that say that even if the collection agency is unlicensed, that means the debt doesn't go away and you can cure it and things like that. Correct, correct. I think one of you might have mentioned this earlier. I think what's key is because really you're deciding a question of statutory interpretation here from the state statute. As someone mentioned, we know that the Tennessee General Assembly, back in May of 2014, passed amendments to that act. Based on that, it's very clear that entities like those I represent, LVNV and PYOD, could not be brought to suit now under these kinds of circumstances or under these kinds of claims because the state actually in that amendment exempted them specifically. In fact, the provision says this chapter does not apply to any person that holds or acquires accounts, bills, or other forms of indebtedness through purchase, assignment, or otherwise and only engages in collection activity through the use of a licensed collection agency or an attorney issued to practice in this state. Now, does that go? Your adversary, when I was pressing them about how are your folks different from Joe's hardware, was saying that there's a specific exemption for people collecting their own debts. Is what you just read us in the same list of exemptions or kind of? Yes. What he's describing is another exemption. This is a particular exemption. And I think when you think of the public policy behind this, and of course if you read what was in our materials, the clarification statement, it had long been published by the Tennessee Collection Services Board, upon which my clients relied, as did other businesses in Tennessee, and who I can tell you had influence in this amendment act occurring so that this situation would go away. They made it very clear that when they passed this amendment, that was expressing their legislative intent. They say it is the legislative intent that the provisions contained in this act are remedial in nature and intended to clarify the statute and policies of the Collection Services Board. The clarifying provisions contained in this act are intended to provide a restatement of the statute and policies as the statute existed prior to the passage of this act. And I can tell you there was nothing about this act that was controversial. It passed both chambers of the Tennessee Assembly with no dissents of any kind. Council, let me ask you one other thing about your briefing, because I was trying to find places for some of the particular statutes that are quoted. And you have a very nice table of authorities, but you don't have any page references in it. I don't know if you did the briefing or if you know, but the table of authorities, just list your authorities with no page reference. So you might look at that for the future. I'm very sorry. That's what table of authorities are for. Let me, while I've got a minute, two minutes, let me also, I think there's an important distinction to make. Council, we repeatedly, we argue that even under the preexisting version of the statute, the pre-amendment version, that our client wasn't required to be licensed because the way it's worded, there has to be some intentional act of collecting or seeking to collect. Secondly, our client has no clients. They have no contact with debtors, which means that parts of the statute would be totally inapplicable and almost nonsensical. And as Council brought up, this is a class D misdemeanor in the state of Tennessee to act without a collection service license. Our clients were told by the state, you don't need a license. And so if there's any ambiguity to be found in the statute, I think under the rule of lenity that the consent. Well, it requires it to be a willful violation, as I read 6221.23, although it does say it's a class C misdemeanor rather than D. I don't know how much worse that is. But the key thing there would be willful violation, wouldn't you, if you're relying on regulatory advice, that that makes it harder to be willful. That would be a good defense to willful, yeah. Also, in closing, I just want to say, I think our argument on the pre-amendment version of the statute rests on which part of the sentence we are going to amplify. So, for instance, and the trial court agreed with us, the statute says collection service means any person that engages in or attempts to engage in the collection of delinquent accounts, bills, or other forms of indebtedness. And the court agreed with us that that, by its nature, requires some active participation, some act of your own, as opposed to relying upon licensed professionals who are subject to discipline, who are subject to accountability in the state of Tennessee. What opposing counsel has done is they emphasized the second part of that sentence that says, so it means any person that engages or attempts to engage in the collection of delinquent accounts, irrespective of whether they purchased the debt themselves or owned it themselves, the second part is just a clarifier. The key language is those first few words of that sentence. Thank you, Your Honor. Thank you, counsel. Your time for rebuttal. Five minutes and a lot to say and probably won't get to all of it. First, opposing counsel assumes that the 2014 amendments amend the 2009 statute. It says that, and this is not in the statute, it's a statement of intent, and the U.S. Supreme Court and the Tennessee Supreme Court says be very careful about applying alleged statements of intent from later legislative bodies about prior statutes. They're not the same entity. And it says in its terms the clarifying provisions. Well, if they're clarifying provisions, there has to be some ambiguity. And that's the 2014 statute. So what they're trying to do is not revoke and rewrite the statute, which we agree happened in 2014. They're trying to bootstrap the amendments back to 2009 to retroactively take effect. Well, for that to happen under Tennessee law, it has to either be procedural or there has to be ambiguity in the law that needs clarification. There are two sections. 102, which again says someone who engages in collection activity. That's unambiguous. Opposing counsel says that LVNV had no contact with the plaintiff or with the appellants. First of all, they reported and they admitted in a request to admit, and it's in footnote 4 of the lower court's opinion, that they report negative information to all three major credit bureaus as LVNV. It's in the record, a copy of the Experian sheet, regarding LVNV's claim of the account it purchased from Citibank that is owed. And it stays on his credit report and it deals only with Mr. Bradford. There is no mention of resurgence. And it stays there for ten years. Three circuit courts in this country have said one of the strongest methods of collecting debt legally is to file negative reports with the credit agency. LVNV filed that report, and that's direct contact with not only the appellants but with the public. That's engaging in collection activity. Secondly, filing the lawsuit, LVNV is the named plaintiff.  One of my problems with this case is assuming for the moment that this is collection activity. Certainly everybody agrees it's collection activity under the federal statute, but I don't understand why it's illegal collection activity for a company to decide that it's not going to go forward with a lawsuit unless there's a default judgment. If it's going to cost money to go forward with a lawsuit. So what is it that makes, what I'm saying is the overall theory of the case, before you ever get to these questions about state law, seems to be questionable. Your Honor, if I understand your question. I'm just saying, I don't know if anything illegal happens all the time. People file lawsuits, and they don't want to go forward because it's going to cost a lot of money, and so they take a non-suit in the lawsuit. And I'm just saying, why is that theoretically so bad as to be a violation of the Federal Debt Collection Act? Your Honor, the reason it's bad is in section 105, there's a one-sentence statement that says, collection services are not to engage in the collection of delinquent debt without a license. So that is a prohibition. I'm talking about the state law. The state law. And so it's a misdemeanor to do that. Our position is the filing of the three. Your position is if they've made a mistake of interpreting the state law here, that that is a federal violation. No, Your Honor. I'm saying, regardless of how they made it, filing lawsuits as the named plaintiff, and on page 964 of the record and 23, it says, using the court system, that the Tennessee General Sessions Court of the county where Mr. Bradford lives, summons him to appear before the court to answer to LBNV as to why, on a suit for sworn account, resurgence not mentioned, he does or doesn't owe $2,800, give or take. If he doesn't show up, he gets a default judgment. He can't ignore this. This isn't a letter. It's not a phone call. This is done through the attorney-agent. The purpose of a lawsuit, normally, I thought, was to collect something. Collect the debt. And if you can collect it, if you've got to spend a lot of money to collect it, you can take a non-suit. And I never had contemplated that that may be somehow illegal fraud or something. Your Honor, this is— You follow my question there? Yes, Your Honor. Our argument is this case was non-suited. It was the filing of the lawsuit, and the clients, the three appellants, showed up to defend the case, and it was non-suited. But it was the act of filing the lawsuit that constituted engaging in collection activity without a license. That's unlawful in the state of Tennessee and under the FDCPA. If you're a debt collector, which LVNV certainly is under the hundreds of cases, I think, that are in Westlaw, if you searched LVNV, they engaged in unlawful activity, and that is a violation. Unlawful activity is that they don't go forward with the case unless there's a default judgment. The unlawful activity is filing a lawsuit to collect a debt, filing a negative report with the reporting agencies without a license. Midland has a license. Cash has a license. Other debt collectors the same size as LVNV all have a license in the state of Tennessee. LVNV isn't. Our position is by going against Tennessee consumers, they have made the decisions, and those are words from opposing counsel. They have the decision to control the lawsuit. So they're in control. They're involved. At a minimum, the question of whether or not LVNV engaged in collection activity is a material issue of fact to be submitted to the jury. I submit that the lower court's opinion that as a matter of law there is no question with the facts taken in a light most favorable to the appellants that should not have been submitted to the jury. Counsel, let me just take you back to make sure that I've got this. This is a suit under the FDCPA, the federal statute. And the connection to the state is only the language actions that may not lawfully be taken. Yes, it's directly linked with the LeBlanc case. Right, but you have to go to that. So you say that simply filing the suit, even if the suit is wholly legitimate, you say is an action that may not lawfully be taken because it might be subject to some other sanction. Well, to put it more broadly. Doesn't the statute pretty clearly say that the state statute, if somebody brings an action and they're not properly licensed, it doesn't mean the debt goes away. It doesn't mean that it can't be cured. It doesn't mean that it's the subject of any other civil action, right? That's all in that 103. I'll clarify that, Your Honor. 102 says that, again, a collection service is someone who engages in collection activity. 103 has exemptions. In 2009, section 103 had four exemptions. One of those exempted attorneys at law. And it had others that aren't pertinent. In 2014, the legislature said we're adding five additional exemptions, one of which is the exemption for passive debt buyers, which is created by the debt buyers and their law. I was citing 105 about what happens if you file a suit and then maybe you're not licensed. And that's what I was citing, the portions that say that it doesn't make the debt go away. It doesn't mean you get your money back. It means they can cure the default at any time. And it's not subject to any other civil action or defense. That's all in 105, isn't it? Yes, Your Honor. And I think the question ultimately you're getting to is what is the effect of the 2014 amendment as it relates to 2009? In Tennessee, if it does not clarify an ambiguous prior section, if it's not procedural. All the parts that I was reading from 105, were they all put into effect in 14? Yes, they did not exist. The whole section? Because there's whole credits to all sorts of previous public acts. The law has been around since 1989, but the portions you just referenced, there was no hint of any of those concepts in the statute in 2009. Okay. All right. I can look that up. All right. Thank you, Counsel. The case will be submitted. The remaining cases will be submitted on briefs, and you may adjourn court. Dishonorable court is now adjourned. Thank you. Thank you. Counsel, should I have a comment? I think you have to. I don't know. Do you have a comment? I don't have a comment. I don't know. Do you have a opinion? I don't know. You have a opinion? I guess you're good. I guess you're good. I was actually looking for a little bit of a comment. How are you? I'm Amy. Please, let me know. Please do. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.